**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**LAURA FORD,**
                **Plaintiff,**

**-vs-**                                                               **Case No.  6:06-cv-3-Orl-31JGG**

**SUPREME COURT OF FLORIDA,**
**BARBARA J. PARIENTE,**
**FLORIDA BOARD OF BAR EXAMINERS,**
**KATHRYN RESSEL,**
**ELEANOR MITCHELL HUNTER,**
**JANE DOE PROCTOR,**
                **Defendants.**

_____

## ORDER

After repeatedly failing the Florida Bar Exam, the Plaintiff, Laura Ford ("Ford") sued the Defendants alleging violations of the United States and Florida Constitutions, the Americans with Disabilities Act and the Rehabilitation Act, as well as various state law causes of action.  (Doc. 1). This matter is presently before the Court on Motions to Dismiss and Memoranda in Support thereof filed by the Florida Supreme Court ("FLSC") and Chief Justice Barbara Pariente ("Chief Justice Pariente") (Docs. 18 and 19), and by the Florida Board of Bar Examiners ("FBBE"), Kathryn Ressel ("Ressel"), Eleanor Mitchell ("Mitchell") and Jane Doe Proctor ("Proctor") (collectively referred to, where appropriate, as the "FBBE Defendants") (Docs. 13 and 14), and Ford's Memorandum in Opposition thereto (Doc. 26).

**I.     Background**

A. Parties

Ford is an individual who earned a *Juris Doctor* degree from Western New England College of Law and thereafter sought admission to the Florida Bar.

The FLSC is the highest court in the State of Florida. It is charged with the regulation of the admission of lawyers in the State of Florida to the Florida Bar, and is the governing body of the FBBE. Chief Justice Pariente is the Chief Justice of the FLSC. The FBBE is an administrative arm of the FLSC, the duties of which include recommending applicants for admission to the Florida Bar and administration of the Florida Bar Exam ("Exam"). Ressel was the Executive Director of the FBBE during the time Ford first applied to take the Exam in July of 2001. Hunter is the current Executive Director of the FBBE. The Executive Director of the FBBE is responsible for setting policies and implementing the Rules Regulating the Bar Exam and for the proper disposition of accommodation requests. Proctor was an agent or employee of the FBBE responsible for administering the Exam and ensuring that examinees received the necessary accommodations.

B. Facts

In 1989, Ford was involved in a car crash, as a result of which she sustained a 3% to 4% permanent injury to her neck and shoulder areas.[1] She suffered from weakened motor skills on her left side, as a result of which she became fatigued from reading and writing which, in turn, inhibited her ability to concentrate and write.

---

[1] Specifically, Ford was diagnosed with: (1) chronic left trapezius myositis, which interferes with her daily activities; and (2) "myofacial pain syndrome with a 4% permanent injury to her body."

On September 10, 2001, Ford received an Admission Status Report from the FBBE notifying her that she had failed both parts of the Exam.[2]  Approximately two months later, Ford applied for a bar exam accommodation (for the February 2002 Exam), requesting one day of rest between the testing days and other accommodations including ten minute rest breaks and twenty-five percent additional testing time.[3]  FBBE denied her requests for a rest day, rest breaks and additional time but, in doing so, did not make any findings of fact or conclusions of law to support the denial.  The FBBE did not apprise Ford of the denial until January 3, 2002, and thus Ford did not have an opportunity to appeal.

Ford took the February 2002 Exam with limited accommodations, but did not receive the fully cushioned chair that had been granted to her.  On April 15, 2002, she received an Admission Status Report notifying her that she had again failed both parts of the Exam.[4]

On April 29, 2002, Ford submitted an accommodation request for the July 2002 Exam, in which she requested one day of rest between testing days, ten minute breaks after every hour of testing, thirty-three percent more time for the essay portion, and other accommodations, and in support of which she submitted new documentation.  The FBBE denied her request on June 4,

---

[2] The Exam is divided into two parts: (1) the General Bar Examination (Part A), which covers Florida law and consists of three essays and one hundred multiple choice questions, administered over the course of one day; and (2) the Multistate Bar Examination (Part B), which consists of two hundred multiple choice questions, administered over the course of a second day.  A person must also pass the Multistate Professional Responsibility Exam ("MPRE"), but issues related to that test are not relevant here.  Although Ford has not alleged as much, the Court presumes that she sat for the July 2001 Exam.

[3] Ford filed all of the supporting documentation required by the FBBE.

[4] Ford asserts that she would have achieved the points necessary to pass the Exam had she been granted one day of rest between test days.

2002. The FBBE did not provide reasons for its denial, and stated that she must provide new and additional matters that had not previously been considered in order for it to reconsider its decision. Ford filed a petition for reconsideration, emphasizing her need for a rest day and for additional time. The FBBE denied her request for a rest day and additional time, but failed to make any findings of fact or conclusions of law in doing so.

Ford received an Admission Status Report on September 17, 2002, which notified her that she had passed Part A but failed Part B of the Exam.[5] On November 10, 2002, she requested accommodations for the February 2003 Exam and indicated that the accommodations provided for the July 2002 Exam were adequate as she would now only be taking Part B of the Exam. The FBBE informed her that it would grant the accommodations previously provided, as well as a podium and permission to bring a drink. At that time, Ford expressed her concern to Ressel that the FBBE had not provided her with a letter listing her specific accommodations, but Ressel informed her that the proctors would be aware of the appropriate accommodations.

When Ford arrived to take the February 2003 Exam, Proctor was not present and did not arrive until the time the Exam was to begin. After Proctor read the instructions and announced the beginning of the Exam, she then approached Ford. Ford advised Proctor that one of her accommodations was to circle her answers, and asked what items she should fill in on the testing sheet, which required the examinee to "bubble in" certain information. Proctor insisted that Ford use the testing sheet and that Ford could not circle her answers. Ford then showed Proctor the

---

[5] Ford alleges that had she been granted reasonable accommodations, she would have passed the entire Exam. Although Ford does not allege as much, the Court presumes that she sat for the July 2002 Exam.

November 21, 2002 and June 4, 2002 letters from FBBE which indicated that Ford could circle her answers. After approximately nine minutes, Proctor told Ford to "bubble in" her name and social security number on the testing sheet. Because of this delay, Ford lost nine minutes of time for taking the exam, for which she was not compensated. On April 14, 2003, Ford received an Admission Status Report which indicated that she had failed Part B of the Exam.[6]

On June 12, 2003, Ford filed a petition for review of the April 14, 2003 ruling and a petition for waiver of certain Bar admission regulations, in which she requested that: (1) her scores from the July 2002 Exam and the February 2002 exam be averaged; and (2) her MPRE scores, which had been deleted due to the passage of time, be reinstated. The FBBE denied these requests. Therefore, on December 5, 2003, Ford filed an amended petition for review to the FLSC as an appeal and a petition for review of the FBBE's adverse rulings, including the denials of reasonable accommodations, the denial of a certification of minimum competence for admission to the Bar, and violations of Ford's Constitutional rights, the Americans with Disabilities Act, and the Rules of the Florida Supreme Court Regulating Admissions to the Florida Bar. The FLSC denied her petition for review on September 23, 2004.

C. Claims and Arguments

Ford asserts that the Defendants have denied her reasonable accommodations, discriminated against her, failed to accommodate her, failed to properly administer and score the Exam, failed to provide her with notice of the procedures for applying for and appealing requests for accommodations, failed to provide findings of fact and conclusions of law, negligently failed to

---

[6] Ford asserts that had she not lost nine minutes of time, she would have achieved the necessary score to pass Part B of the Exam.

properly administer the Exam and govern admissions to the Florida Bar, and conspired to violate her civil rights. She thus asserts claims for violations of the Americans with Disabilities Act (Count I),[7] violations of the Rehabilitation Act (Count II), violations of her rights under the Fifth and Fourteenth Amendments, pursuant to 42 U.S.C. section 1983 (Count III), violations of the Due Process Clause of the Fifth and Fourteenth Amendments, including an assertion that various rules associated with the Exam are unconstitutional (Count IV), a violation of the Separation of Powers Doctrine (Count V), negligence (Count VI), "tort pursuant to Florida Statute § 768.28" (Count VII), conspiracy to violate her civil rights pursuant to 42 U.S.C. section 1985 (Count VIII), "state claims" against Chief Justice Pariente, Ressel, Hunter and Proctor in their individual capacities (Count IX), and discrimination in violation of Article I, section 2 of the Florida Constitution (Count X).

The Defendants have moved to dismiss Ford's Complaint, arguing that: (1) venue is not proper in this District; (2) this action is barred by the *Rooker-Feldman* Doctrine; (3) Ford lacks standing to pursue this action; (4) this Court is barred from hearing this action by the *Younger* abstention doctrine; (5) Ford's claims are barred by the Eleventh Amendment; (6) the various individual defendants are entitled to absolute judicial immunity from any claim for damages; and (7) Ford has failed to state a claim for relief under all ten Counts.

## II.     Standard of Review

In ruling on a motion to dismiss, this Court must view the complaint in the light most favorable to the Plaintiff, *Cannon v. Macon County*, 1 F.3d 1558, 1565 (11th Cir. 1993), and must limit its consideration to the pleadings and any exhibits attached thereto. FED. R. CIV. P. 10(c);

---

[7] All Counts are asserted against all Defendants, unless otherwise noted.

*see also GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993).  The Court will liberally construe the complaint's allegations in the Plaintiff's favor, *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969), and will not dismiss a complaint for failure to state a claim unless it appears beyond a doubt that the Plaintiff cannot prove any set of facts that support a claim for relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  In ruling on a motion to dismiss, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

In reviewing a complaint on a motion to dismiss under Federal Rule of Civil Procedure ("Rule") 12(b)(6), the rule to be applied is that, "courts must be mindful that the Federal Rules require only that the complaint contain a short and plain statement of the claim showing that the pleader is entitled to relief."  *U.S. v. Baxter Intern., Inc.*, 345 F.3d 866, 880 (11th Cir. 2003) (*citing* FED. R. CIV. P. 8(a)).  This is a liberal pleading requirement, one that does not require a plaintiff to plead with particularity every element of a cause of action.  *Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 683 (11th Cir. 2001).  Instead, the complaint need only "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory."  *Id*. (internal citation and quotation omitted).  "A complaint need not specify in detail the precise theory giving rise to recovery. All that is required is that the defendant be on notice as to the claim being asserted against him and the grounds on which it rests." *Sams v. United Food and Comm'l Workers Int'l Union*, 866 F.2d 1380, 1384 (11th Cir. 1989).

A defendant may also move to dismiss on the ground of improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3) ("Rule 12(b)(3)"). *Webster v. Royal Caribbean Cruises,*

*Ltd.*, 124 F. Supp. 2d 1317, 1320 (S.D. Fla. 2000). When a defendant challenges venue, the plaintiff has the burden of establishing that venue is proper. *Wai v. Rainbow Holdings*, 315 F. Supp. 2d 1261, 1268 (S.D. Fla. 2004). In resolving such a motion, the Court accepts all allegations of the Complaint as true, unless contradicted by the defendant's affidavits,[8] and draws all reasonable inferences and resolves all factual conflicts in favor of the plaintiff (the non-moving party). *Id*.

### III.   Legal Analysis

All of the Defendants seek dismissal of this case under Rule 12(b)(3) on the grounds that venue is not appropriate in this Court, and argue that venue would be proper in the Northern District of Florida.[9] (Doc. 14 at 6-8; Doc. 18 at 5-6).

Because this Court's jurisdiction over this action is not founded on diversity of citizenship, venue is governed by 28 U.S.C. section 1391(b) ("Section 1391(b)"), which provides, in relevant part:

> A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events of omissions giving rise to the claim occurred . . . , or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(b). Ford argues that venue is appropriate in this District under subsection (2) because: (1) she filed her Bar application from this District; (2) she received all correspondence in

---

[8] In resolving a motion pursuant to Rule 12(b)(3), the Court may consider matters outside the pleadings. *Webster*, 124 F. Supp. 2d at 1320.

[9] None of the Defendants have moved for a transfer of venue to the Northern District of Florida. Instead, they simply seek a dismissal of this case without prejudice. (Doc. 14 at 8; Doc. 18 at 6).

this District; (3) her physicians and many witnesses are located in this District; (4) she resides in this District; and, most importantly, (5) "the negligent acts which arose out of the failure of the defendants . . . to provide meaningful due process and reasonable accommodations occurred at the bar exam which is located . . . in the Middle District." (Doc. 26 at 3-4). The Defendants have cited a number of cases, each involving claims similar to Ford's, holding that each of Ford's first four grounds are insufficient. *See Hanson v. Fla. Bd. of Bar Examiners*, Case No. 05-61332-CIV-Middlebrooks/Johnson (S.D. Fla. Feb. 21, 2006) (residence, receipt of correspondence, and location of treating physicians are insufficient to establish venue in particular judicial district; transferring case to Northern District of Florida); *Kirkpatrick v. Eander J. Shaw, Jr.*, Case No. 90-1302-Civ-T-3A98(B) (M.D. Fla. Mar. 29, 1991) (transferring case to Northern District of Florida); *Blasi v. Fla. Bd. of Bar Examiners*, Case No. 88-1983-Civ-T-17 (M.D. Fla. Dec. 29, 1988) (rejecting plaintiff's assertion that because he suffered injuries to constitutional rights, his claim arose in Middle District of Florida).

Thus, the Court turns to Ford's fifth ground, in which she specifically asserts that "the tortious acts committed by the Defendants when the Plaintiff lost 9 minutes of exam time due to the proctor's confusion led to the irreparable injury committed upon the Plaintiff." (Doc. 26 at 3). This claim is based solely upon Proctor's actions on the day Ford took the Exam. (*See id*. at 5). Counts VI and VII are the only Counts in which Ford addresses Proctor's alleged negligence in administering the Exam.[10] (See Doc. 1 at 31-34). In evaluating whether acts support venue under

---

[10] Read extremely broadly, Ford's Section 1983 claim in Count III also appears to address the administration of the Exam, (see Doc. 1 at 21), but there are no allegations specific to that Count sufficient to allow the Court to draw a reasonable conclusion in this regard.

Section 1391(b)(2), "only the events that directly give rise to a claim are relevant and . . . only those acts and omissions that have a close nexus to the wrong are properly weighed in the substantial part analysis." *Morgan v. North MS Medical Center, Inc.*, 403 F. Supp. 2d 1115, 1123 (S.D. Ala. 2005) (internal citation, quotations and punctuation omitted). The court must "focus on the actions of the defendant, not of the plaintiff." *McDaniel v. IBP, Inc.*, 89 F. Supp. 2d 1289, 1294 (M.D. Ala. 2000). Ford alleges that Proctor was negligent in the administration of the Exam, which took place in the Middle District of Florida. Thus Proctor's acts directly gave rise to Ford's claims in Counts VI and VII, and therefore venue for those two counts is proper in this District.

However, Ford has pled eight additional Counts, each based on different legal theories, and "[w]hen multiple claims are pled, venue must be proper for each claim." *Burger King Corp. v. Thomas*, 755 F. Supp. 1026, 1029 (S.D. Fla. 1991); *Neizil v. Williams*, 543 F. Supp. 899, 904 (M.D. Fla. 1982). Accordingly, the Court must again apply the Section 1391(b) analysis to determine whether venue for Ford's remaining claims is proper in this District.[11] Ford's claims in Counts I through V and VIII through X all arise from actions, events and/or situations that occurred outside of this District and, more specifically, that occurred in the Northern District of Florida. For example, the FBBE is located in Tallahassee, Florida and all of its books and records are stored in Leon County, Florida, the Executive Director of the FBBE resides in the Northern District of Florida, and all of Ford's requests for accommodations were reviewed and decided at

---

[11] Venue for actions brought pursuant to the ADA and Section 1983 is governed by section 1391. *See Williamson v. Int'l Paper Co.*, 85 F. Supp. 2d 1184, 1187 (S.D. Ala. 2000) (applying Section 1391 as venue provision in ADA action); *Cramer v. Chiles*, 33 F. Supp. 2d 1342, 1344-45 (S.D. Fla. 1999) (applying Section 1391(b) as venue provision for claims under, *inter alia*, ADA and Section 1983); *New Alliance Party of Ala. v. Hand*, 933 F.2d 1568, 1570 (11th Cir. 1991) (applying Section 1391 as venue provision in Section 1983 action); *Jones v. McAndrew*, 996 F. Supp. 1439, 1443 n.3 (N.D. Fla. 1998) (same).

the FBBE's offices. (Doc. 14, Att. 2 at 2-3). Similarly, the FLSC and Chief Justice Pariente sit in Tallahassee, and the FLSC makes all of its decisions, including those related to Ford's various requests and petitions, there.[12] Fla. Const. Art. II, s.2; *see also* Doc. 18 at 5. Ford's individual counts may thus be addressed as follows:

- Counts I and II (violation of the ADA and the Rehabilitation Act, respectively, for failure to provide reasonable accommodations) - all of the decisions regarding Ford's accommodations were made by the FBBE in its offices in Tallahassee;

- Count III (pursuant to Section 1983 for violation of Ford's civil rights) - all decisions regarding Ford's accommodations, scoring of the Exam, and the implementation of policies and rules were made by the Defendants in Tallahassee;[13]

- Count IV (due process violation) - all decisions regarding the rules and procedures adopted by the Defendants, including the provision of notice, the making of findings of fact and conclusions of law, the adoption of rules regulating the Exam, and decisions regarding the scoring of exams, were made by the Defendants in Tallahassee;

- Count V (Separation of Powers Doctrine) - the FLSC carries out its duties, both administrative and judicial, as they relate to the Florida Bar, in Tallahassee;

- Count VIII (Conspiracy to violate civil rights under 42 U.S.C. § 1985) - any agreements made by the Defendants regarding accommodations, rules and due process would

---

[12] Ford does not dispute any of the facts regarding the residence, and the place of conducting business, of the various defendants.

[13] Ford does assert that the Defendants failed to "properly administer" the Exam, but provides no further explanation for that allegation, absent which the Court is unable to determine her meaning behind that allegation.

presumably have been made in Tallahassee, where the Defendants carry out their duties, and Ford has failed to make allegations to the contrary;

- Count IX is essentially a restatement of the claims discussed above and, for that reason, the relevant acts would have occurred in Tallahassee; and

- Count X (violation of the Florida Constitution) - the Defendants made the decisions regarding Ford's accommodations in Tallahassee.

Clearly, the actions of the various Defendants and the events directly giving rise to Ford's claims in Counts I through V and VIII through X occurred in the Northern District of Florida and, accordingly, venue for those claims is appropriate in that District.

The Court is thus confronted with a situation wherein a plaintiff has filed a complaint where venue in this District is improper regarding a majority of the claims (eight out of ten). Thus the Court must decide whether to dismiss those claims for which venue in this Court is inappropriate, or to transfer some or all of the claims to the Northern District of Florida. *See Strategic Learning, Inc. v. Wentz*, 2005 WL 241182, *4 (E.D. Pa. Feb. 1, 2005). Under 28 U.S.C. section 1406(a), when a case is filed in an inappropriate venue, the Court "shall dismiss, or if it be in the interest of justice, transfer such case to any district . . . in which it could have been brought." 28 U.S.C. § 1406(a); *see also Lomanno v. Black*, 285 F. Supp. 2d 637, 643 (E.D. Pa. 2003); *Schultz v. Ary*, 175 F. Supp. 2d 959, (W.D. Mich. 2001) (court may invoke its authority under both 28 U.S.C. §§ 1406(a) and 1404(a) to transfer action to district where it could have been brought). This raises two considerations.

First, the Court must decide whether to sever those claims for which venue in this District is appropriate from those for which it is not. While it would be possible to sever the claims, it is

not practical to do so, since all claims arise from related facts and involve the same parties. *See Strategic Learning*, 2005 WL 241182, *4; *Schultz*, 175 F. Supp. 2d at 965-66. Accordingly, the Court will not sever the claims, thus bringing the Court to the second issue: whether to dismiss or transfer this case.[14] Were the Court to dismiss this case, Ford would be forced to simply re-file in the Northern District, costing her both additional time and expense, and thus the Court finds it to be in the interest of justice to simply transfer this entire case to that District.[15] *See Hicklin Eng'g, L.C. v. Bartell*, 116 F. Supp. 2d 1107, 1113 (S.D. Iowa, 2000); *Cauff Lippman & Co. v. Apogee Fin. Group, Inc.*, 745 F. Supp. 678, 682 (S.D. Fla. 1990).

## IV. Conclusion

For the reasons stated herein, the Court finds that venue for this case is appropriate in the Northern District of Florida and that this case should be transferred to that Court. Accordingly, it is

---

[14] This consideration is necessary because the claims for which venue is not appropriate in this District predominate over those for which venue is appropriate and, in the interests of efficiency, the Court should determine a solution that effectively addresses most, if not all, of the claims.

[15] The Defendants have not moved for a transfer, and, instead, have moved for dismissal on the grounds of improper venue. Accordingly, this transfer will be pursuant to 28 U.S.C. § 1406(a), which governs actions filed in an improper venue, as opposed to § 1404(a), which governs actions filed in permissible yet inconvenient venue. *See Roofing & Sheet Metal Servs., Inc. v. La Quinta Motor Inns, Inc.*, 689 F.2d 982, 992 n.16 (11th Cir. 1982); *Burger King Corp. v. Thomas*, 755 F. Supp. 1026, 1030 (S.D. Fla. 1991). In any event, the Court concludes that transfer would also be appropriate under § 1404(a). When considering a transfer under that section, courts are to consider, *inter alia*, the convenience of the parties and witnesses, the interests of justice, the plaintiff's initial choice of forum, the relative ease of access to sources of proof, the availability of process to compel the presence of unwilling witnesses, the cost of obtaining the presence of the witnesses, and the public interest. *See P & S Bus. Machs., Inc. v. Canon USA, Inc.*, 331 F.3d 804, 807 (11th Cir. 2003); *Stateline Power Corp. v. Kremer*, 404 F. Supp. 2d 1373, 1380 (S.D. Fla. 2005); *C.M.B. Foods, Inc. v. Corral of Middle Ga.*, 396 F. Supp. 2d 1283, 1286-87 (M.D. Ala. 2005). Although Ford's choice of venue is a significant factor, and the Court notes that she has asserted that it would be more cost-effective for her to litigate this matter in this District, the Court finds that these concerns are outweighed by the other factors.

**ORDERED THAT** the Defendants' Motions to Dismiss (Docs. 13 and 17) are DENIED. However, the Clerk is directed to transfer this case to the United States District Court for the Northern District of Florida.

**DONE and ORDERED** in Chambers, Orlando, Florida on May 18, 2006.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party